UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
                                          :
CARMEN L. ARIAS,                          :
                        Plaintiff,        :
                                          :          11 Civ. 1614
            v.                            :
                                          :          **<u>OPINION</u>**
MICHAEL J. ASTRUE, Commissioner of        :
Social Security,                          :
                        Defendant.        :
                                          :
                                          :
------------------------------------------x


        This is an appeal of a decision by the Social Security Administration

denying plaintiff Carmen Arias' application for disability insurance benefits.

Both parties move for judgment on the pleadings.  Appellant Arias seeks

reversal of the Commission's decision, while the Commissioner of Social

Security, appellee, seeks dismissal of the appeal.

        The Commissioner's decision should be vacated and the matter remanded

for further proceedings.

        Arias applied for disability insurance benefits after her neck and right arm,

her dominant arm, were injured on the job by a malfunctioning piece of

manufacturing equipment.  The record clearly reflects that Arias has endured

severe pain since her injury and that the injury has greatly limited her ability

to work.  She suffers from limited range of motion in her right arm, she is

unable to push, pull, or lift anything weighing more than ten pounds with that

arm, and she must avoid repetitive motions with it.  The record also indicates that Arias suffers from psychological conditions including depression and a condition known as "adjustment disorder."

Arias initially filed an application for benefits on June 28, 2007, which was denied.  She then requested a hearing before an ALJ.  A hearing was held on August 6, 2009 after which the ALJ issued a decision on October 8, 2009 denying benefits.

The ALJ concluded that, though Arias suffered from a severe impairment that prevented her from performing any of the jobs she had previously worked, she retained sufficient residual functional capacity to do light work, and that she was not disabled.  The ALJ based this conclusion in part on the findings of a vocational expert to whom the matter was referred by the ALJ.  To make his report, the expert relied on a "residual capacity assessment" prepared by the ALJ.[1]

The ALJ's residual functional capacity assessment concluded that Arias could perform light work, provided that this work did not require her to reach, to perform more than occasional manipulations, or to lift more than five pounds with her dominant, right arm.  The ALJ's assessment involved a thorough review of the objective medical evidence and of Arias's subjective

_____

[1] The expert's report to the ALJ took the form of answers to a number of interrogatories which he provided by completing a form on which he was directed to check "yes" or "no" to indicate his responses to several questions.  Two of these questions were left unanswered.  One asked whether the expert had reviewed evidence relating to the claimant's vocational background, and the other asking whether the positions the expert listed on the form were positions that an individual with Arias' functional capacity could perform.

complaints relating to the injury she sustained to her neck and right arm while working as a machine operator.

Arias contends that the ALJ's assessment was deficient in certain respects, as will be discussed later in this opinion.

The expert concluded that Arias could work as a photocopying machine operator, school crossing guard, or a distributor of advertising materials.  The ALJ incorporated the vocational expert's findings in the ALJ's decision finding that Arias is not disabled.

After the ALJ denied her claim, Arias requested review by the Social Security Appeals Council.  Her request was denied.  Arias then brought the instant action challenging the Commissioner's decision.

## Discussion

Arias argues that the ALJ's decision was not supported by substantial evidence because it indicates that she suffered no limiting side effects from her medications.  In addition, she argues that the ALJ's decision misapplied the applicable law in failing to consider the limitations imposed by these side effects and her adjustment disorder in assessing her residual functional capacity.  Finally, she argues that the vocational expert's statements must be disregarded because he did not properly answer all of the questions put to him and because his statements relied on the ALJ's flawed residual capacity assessment.

- 3 -

This court reviews the Commissioner's factual conclusions to determine whether they are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The court also, however, reviews the Commissioner's decision to ensure that the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir.2009).

While the court's review of the ALJ's factual determinations is deferential, the ALJ's discretion in making factual determinations and explaining her findings is not without limits. The ALJ may not simply ignore contradictory evidence. When the record contains testimony tending to contradict the ALJ's conclusion, the ALJ must acknowledge the contradiction and explain why the conflicting testimony is being disregarded. See Valente v. Sec'y of Health & Human Services, 733 F.2d 1037, 1045 (2d Cir. 1984). An ALJ's determination of a witness' credibility is entitled to great deference by reviewing courts, but the ALJ must first articulate what her determination was and the basis for it. This is necessary both to enable meaningful evaluation by a reviewing court and to ensure that a claimant can understand the reasons for the ALJ's disposition of her case, even when it is unfavorable. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); Calzada v. Astrue, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010); Fox v. Astrue, 05 Civ. 1599, 2008 WL 828078 at *12 (N.D.N.Y. Mar. 26, 2008). If the ALJ detected an inconsistency in the claimant's testimony, it was her duty to ask about the inconsistency "rather than simply

snap the trap closed in his written decision." Id. at *13; Matejka v. Barnhart, 386 F. Supp. 2d 198, 206 (W.D.N.Y. 2005); Fernandez v. Apfel, 98 Civ. 6194, 2000 WL 271967 at *8 (E.D.N.Y. Mar. 7, 2000).

The applicable Social Security regulations require the Commissioner to apply a five-step procedure in evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.... [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998); 20 C.F.R. § 404.1520.

In this case the Commissioner concluded that (1) the claimant was not engaged in substantial gainful activity, (2) at least one of Arias's impairments was severe, (3) that this impairment was not the equivalent of a disabling condition listed in the regulations, and that (4) she could not perform any of the work she had performed in the past. These determinations remain

undisputed.  The dispute here centers on the fifth step, the identification of any other work Arias could perform that exists in the national economy.

In this step, the Commissioner is required to consider the totality of the claimant's limitations, considering the combined effects of limitations caused by both severe and non-severe impairments. Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995); Social Security Ruling (SSR) 96–8p.  In evaluating the impact of mental impairments on a claimant's residual functional capacity, a more detailed analysis of a claimant's functional impairments is required than the one applied in determining whether the impairment is severe. SSR 96–8p.

Once the ALJ has determined the claimant's residual functional capacity, this assessment may form the basis of hypothetical questions posed to a vocational expert.  The expert may use this information for the purposes of determining whether work exists in the economy which a person, so limited, could perform, so long as the underlying assessment is based upon substantial evidence and was reached through the proper application of the applicable legal standards.  See Mancuso v. Astrue, 361 F. App'x 176, 179 (2d Cir. 2010); Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981).

In this case, however, it appears that two potentially significant factors were omitted from the residual functional capacity assessment provided to the vocational expert.

At the hearing, the ALJ asked Arias what medications she was taking and Arias described them.  The ALJ asked if Arias had side effects from the medications and the answer was:

- 6 -

No, just that I have to sleep after I take them.

Shortly after this, the ALJ asked a number of questions about whether Arias had difficulty with certain functions.  One of the inquiries had to do with walking:

> Q. What about walking, do you have any problems walking?
> A. I get tired.
> Q. Do you have any problems that limit your ability to walk?
> A. My knees get swollen and then it starts hurting.
> Q. Your knees?
> A. Knees.
> Q. Have they taken any x-rays or MRIs of the knees?
> A. No.
> Q. Any treatment that you received for that?
> A. I've taken this medication, pointing to that one, with the doctor,
>    because the doctor told me that I'm retaining water on my body
>    and that's the reason why the knees are getting swollen.
> Q. Did he tell you why you were retaining water?
> A. Yes.
> Q. Why?
> A. As a result of all the medications I'm taking.

The ALJ addressed only the first statement in the residual functional capacity assessment, ignored the second, and made no finding about whether Arias could walk or for how long — certainly a crucial determination in finding whether a claimant is able to work.  In such a situation, an ALJ might have concluded that only the "no side effects" testimony was credible.  And if this conclusion was clearly articulated and explained, this court would give it a great deal of weight.  But that is not what happened in this case.  Instead, Arias' testimony about the swelling and pain in her knees was simply omitted without explanation from the assessment relied upon by the vocational expert.

Similarly, the ALJ omitted any information about the symptoms of Arias'
psychological condition in the residual functional capacity assessment.  While
the ALJ had previously determined that Arias' adjustment disorder is not a
severe impairment, the ALJ remained obligated to ensure that even non-severe
impairments were taken into account in preparing the assessment.

Therefore, because insufficient attention was paid to the evidence of side
effects of Arias' medications and her psychological condition, the ALJ's decision
was not based on substantial evidence and should be vacated.

The Commissioner should be instructed to conduct proceedings to allow
the claimant an opportunity to fully explain the side effects of her medication.
The Commissioner should then reevaluate Arias' residual functional capacity in
light of this evidence, evidence relating to her mental impairment, and all the
other evidence relating to her disability, fully explaining its factual conclusions
and the reasons for them.  If the resulting assessment materially differs from
the assessment incorporated in the October 8, 2009 decision, the
Commissioner should make a new step-five showing that work exists in the
national economy capable of being performed by a person with this functional
capacity.

So ordered.

Dated:  New York, New York
       December 21, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 21, 2012

- 8 -